IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CLIVE BARON, | CIVIL ACTION |
|---|---|
| Plaintiff, | |
| v. | |
| ABBOTT LABORATORIES, | NO. 16-2736 |
| Defendant. | |

DuBois, J.                                                                                                   August 1, 2018

**MEMORANDUM**

## I. INTRODUCTION

Plaintiff Clive Baron filed suit against his former employer, Abbott Laboratories ("Abbott"), alleging retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), the Florida Civil Rights Act of 1992 ("FCRA"), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff asserts that Abbott retaliated against him when it did not reinstate him because, he argues, he had previously filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and a lawsuit in this Court in which he asserted claims of age discrimination under the ADEA, FCRA, and PHRA.

Currently before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, defendant's Motion is granted.

## II. PROCEDURAL HISTORY

Plaintiff was employed by Abbott beginning in March 2010 until he was terminated, effective December 31, 2013. Pl.'s SOF ¶ 19. At the time of his termination, plaintiff was 60 years old. *Id.* ¶ 1.

On May 14, 2014, plaintiff filed a complaint with the EEOC alleging that Abbott had discriminated against him based on his age when he was not considered for a supervisor's

position and when it eliminated his position and assigned his responsibilities to younger employees.[1]  Pl.'s SOF ¶ 31.  On August 12, 2014, plaintiff filed a Complaint (the "*Baron I* Complaint") in this Court asserting claims for age discrimination by Abbott under the ADEA, FCRA, and PHRA.  *Id.* ¶ 32.  Plaintiff learned through discovery in *Baron I* that, in December 2014, Abbott planned to create a new position with the same responsibilities as plaintiff's prior position.  *Id.* ¶ 33.  In February 2015, Abbott hired Richard Lanchantin to fill that position.  *Id.* ¶ 34.

By Memorandum and Order dated February 17, 2016, the Court granted Abbott's Motion for Summary Judgment with respect to the *Baron I* Complaint and entered judgment in favor of Abbott and against plaintiff.  The Court concluded "that no reasonable jury could find that [the employees who were 6 and 21 years younger than Baron] 'replaced' Baron because [they did not] take over Baron's job responsibilities."  *Baron I*, No. 14-CV-4706, 2016 WL 660883 at *5 (E.D. Pa. Feb. 17, 2016).  The Court also found that "the employee who replaced Baron was Lanchantin in May 2015" and that the "one-year age gap" between Baron's age at the time of termination and Lanchantin's age at the time of promotion was "insufficient to create an inference of age discrimination."  *Id.* at *6.  That Memorandum and Order made no reference to Baron's potential retaliation claim.

On June 16, 2016, Baron filed the Complaint in the above-captioned case, asserting a claim of retaliation against Abbott in violation of the ADEA, FCRA, and PHRA.  Compl. ¶ 58.

## III.  BACKGROUND

In March 2010, Abbott acquired STARLIMS, a company that provides web-based

---

[1] Plaintiff cross-filed his EEOC complaint with the Pennsylvania Human Relations Commission and the Florida Commission on Human Relations.  Pl.'s SOF ¶ 31.

services for medical laboratories. Def.'s SOF ¶ 3. STARLIMS is a division of Abbott Informatics Solutions ("AIS"). *Id.* ¶ 4. At the time Abbott acquired STARLIMS, plaintiff worked as STARLIMS Chief Business Development Officer, a position which he had held since 2007. Pl.'s SOF ¶ 4. After Abbott acquired STARLIMS, plaintiff served as the General Manager of Europe and Africa. *Id.* ¶ 5. In March 2012, plaintiff was promoted to Manager of Global Commercial Operations. *Id.* ¶ 13; Def.'s SOF ¶ 7. In March 2013, Abbott hired David Champagne, who served as plaintiff's supervisor. Pl.'s SOF ¶ 16.

Abbott terminated plaintiff, effective December 31, 2013. *Id.* ¶ 19. According to Abbott, Champagne eliminated plaintiff's position after a poor performance year by AIS. Def.'s SOF ¶¶ 13, 16. More specifically, Abbott stated plaintiff's termination was not a result of his job performance, but was rather a result of AIS underperformance and the need for reorganization. *Id.* ¶¶ 19, 20.

In February 2015, Abbott hired Richard Lanchantin as AIS Director of Global Sales & Services. *Id.* ¶ 22. Lanchantin's role expanded to Senior Director of Global Commercial Operations by May 2015, at which point, he assumed the same responsibilities as plaintiff at the time of his termination. *Id.* ¶¶ 30–32. Lanchantin ceased his employment with Abbott at the beginning of 2016. Def.'s SOF ¶ 35; Pl.'s SOF ¶¶ 55, 56.

By this time, Champagne had left Abbott and had been replaced by Mark Spencer. Def.'s SOF ¶ 33; Pl's SOF ¶ 55. Shortly thereafter—in March or April 2016—Abbott promoted Pedro Malha to replace Lanchantin. Def.'s SOF ¶¶ 38, 39; Pl.'s SOF ¶ 61. Malha left Abbott in June 2016. Def.'s SOF ¶ 43; Pl.'s SOF ¶ 61, 64. Abbott replaced Malha with Steve Kils in November of 2016. *Id.* Plaintiff asserts that Abbott retaliated against him when it failed to

reinstate him to the position of Director of Global Sales & Services for which Lanchantin was selected and when it continued to reject him as a candidate after Lanchantin left Abbott.

Plaintiff also asserts that Abbott retaliated against him by failing to consider him for other positions, including the position of General Manager of Europe, Middle East, and Africa—a position held by Simon Wood between January 2014 and April 2016. Def.'s SOF ¶ 50; Pl.'s SOF ¶ 65. When Wood left Abbott in April 2016, he was eventually replaced by Gordon Lorimer in November 2016, who was hired, with reduced responsibilities, as Regional Director of Europe, Middle East, and Africa. Def.'s SOF ¶¶ 52, 53; Pl.'s SOF ¶66. Similarly, plaintiff asserts that Abbott retaliated against him by failing to consider him for the position of General Manager of the Americas, which was held by Tamir Gottfried from January 2014 until August 2016. Def.'s SOF ¶ 89; Pl.'s SOF ¶ 71. Upon Gottfried's departure in August 2016, Gottfried was eventually replaced by Gregg Emmert in February 2017, in a diminished role that included fewer responsibilities. Def.'s SOF ¶ 71; Pl.'s SOF ¶ 72.

Plaintiff asserts that Abbott retaliated against him for complaining of age discrimination when it made each of these hiring decisions in which others were selected to fill positions he sought.

### IV. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law" and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## V. DISCUSSION

The basis for plaintiff's Complaint is that Abbott retailed against him when it hired Lanchantin rather than reinstating him to his former position. In his deposition testimony and his responsive materials to defendant's Motion for Summary Judgment, plaintiff asserts that Abbott's subsequent hiring decisions support his claim for retaliation. Specifically, plaintiff alleges that Abbott's failure to rehire him when it replaced Lanchantin with Malha in March or April 2016, and later, when Malha was replaced by Steve Kils in November 2016. Pl.'s SOF ¶¶ 61, 64. Plaintiff also asserts that Abbott's failure to consider and hire him to replace both Gottfried and Wood—and instead hire Emmert and Lorimer—constitutes retaliation.

Abbott first argues that plaintiff failed to exhaust his administrative remedies with respect to its subsequent hiring decisions involving Malha and Kils, because plaintiff's EEOC complaint asserted only that he was retaliated against when Abbott hired Lanchantin. The Court first addresses whether plaintiff has exhausted his administrative remedies, before turning to the underlying merits of the retaliation claim.

A plaintiff seeking relief under the ADEA is required to exhaust administrative remedies. *Hildebrand v. Allegheny County*, 757 F.3d 99, 111 (3d Cir. 2014). "The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge" of retaliation. *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) (quotations omitted)). Under *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), an employee must file a charge with the EEOC alleging a discrete act of retaliation within the relevant time period. *Warsavage v. 1 & 1 Internet, Inc.*, 2018 WL 2363605, at * 3 (E.D. Pa. May 24, 2018). "A discrete act includes 'termination, failure to promote, denial of transfer, and *refusal to hire*'" *Id.* (quoting *National Railroad Passenger Corporation*, 536 U.S. at 114) (emphasis added)). The Third Circuit, however, has stated that "a complainant need not file a new EEO complaint as to 'new acts that occur during the pendency of the case which are fairly within the scope of an [EEO] complaint or the investigation growing out of that complaint.'" *Green v. Postmaster Gen.*, 437 Fed. App'x 174, 178 (3d Cir. 2011).

Abbott bears the burden of showing that plaintiff failed to exhaust his administrative remedies and it has failed to do so. The Court cannot conclude, without more information, that plaintiff's claims regarding Abbott's subsequent hiring decisions are not fairly within the scope of the investigation growing out of plaintiff's original claim of retaliation, which related only to Lanchantin. Accordingly, the Court will consider Abbott's subsequent hiring decisions in addressing plaintiff's retaliation claim.

Absent direct evidence of discrimination, an employee's retaliation claims under the ADEA are subject to the *McDonnell Douglas* three-part burden-shifting framework. *Daniels v.*

*School Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).[2] If the employee establishes a *prima facie* case of retaliation, the burden shifts to defendant to establish legitimate, non-retaliatory reasons for plaintiff's termination. *Id.* If defendant does so, plaintiff must prove by a preponderance of the evidence that defendant's proffered reasons were pretextual. *Id.*

To establish a *prima facie* case of retaliation under the ADEA, plaintiff must prove that: (1) he engaged in a protected activity; (2) subsequent to that protected activity he was subject to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment consequence. *McGuffey v. Brink's Inc.*, 558 F.Supp. 2d 565 (E.D. Pa. 2008) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)). Plaintiff bears the burden of showing that his protected activity was the determinative or motivating reason for the employer's alleged retaliatory action. *Fries v. Metropolitan Management Corp.*, 293 F.Supp.2d 498, 502 (E.D. Pa. 2003) (citations omitted)).

The Court concludes that plaintiff has not established a *prima facie* case of retaliation because he fails to meet his burden of showing that there was a causal connection between the protected activity and the adverse employment consequence.[3] The Court may consider "broad array of evidence in determining whether a sufficient causal link exists [for a plaintiff] to survive a motion for summary judgment." *Daniels*, 776 F.3d at 196 (citations omitted)). "In certain narrow circumstances, an unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal

---

[2] Plaintiff's PHRA and FCRA claims are analyzed under the same framework as ADEA claims. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n. 3 (3d Cir. 2010); *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 n. 2 (11th Cir. 1997)).

[3] The parties do not dispute that plaintiff engaged in a protected activity when he filed his 2014 EEOC Complaint and the *Baron I* Complaint in this Court. And the Third Circuit has recognized that "failure to rehire can constitute an adverse employment action." *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) (citations omitted)).

7

connection." *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 302 (3d Cir. 2007) (citations omitted)).

The first purported retaliatory action taken by Abbott was its hiring of Lanchantin, which occurred in February 2015—approximately nine months after plaintiff filed a complaint with the EEOC alleging age discrimination and approximately six months after plaintiff filed the *Baron I* Complaint. A time lapse of six or nine months is not "unusually suggestive" of a retaliatory motive. *See, e.g.*, *Daniels*, 776 F.3d at 198 (holding that ten-month gap between protected activity and adverse employment action was not unusually suggestive of retaliation); *Williams v. Phila. Housing Auth. Police Dep't.*, 380 F.3d 751, 760 (3d Cir 2004) (holding that two-month gap between protected activity and adverse employment action was not unusually suggestive of retaliation); *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) ("[T]he passage of a long period of time between protected activity and an alleged discriminatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period.")). This Court agrees with those decisions and concludes that plaintiff has failed to prove a retaliatory motive with respect to the Lanchantin hire.

Plaintiff's other proffered evidence is insufficient to infer causation, because he relies on conclusory statements unsupported by the record. Plaintiff states, for example, that Abbott "concealed" the fact that it was hiring from him because the positions were not posted on Abbott's external employment website and were advertised only internally. However, Delores Sanan, the Human Resources ("HR") director, testified that managers within Abbott are given wide discretion in determining how to advertise employment postings. Pl.'s Resp. Opp. to Def.'s Mot. Summary J., Ex. M, Sanan Dep. 15: 17-17: 2. There is simply no evidence that the decision to post the position internally was motivated by retaliatory animus. *See Irving v. Chester*

*Water Auth.*, 439 Fed. App'x 125, 127 (3d Cir. 2011) (concluding plaintiff's "self-serving deposition testimony is insufficient to raise a genuine issue of material fact")).

Plaintiff also asserts that that Abbott concealed from him that it hired Lanchantin during the course of discovery in *Baron I* when Abbott failed to disclose that fact in answers to interrogatories in March 2015. Plaintiff learned at some point between April and July of 2015 that Abbott had hired Lanchantin to his former position. However, plaintiff fails to present any evidence that Abbott's failure to immediately disclose the fact of Lanchantin's hiring was motivated by retaliatory animus.[4]

With respect to Abbott's subsequent decision to replace Lanchantin with Malha in March or April 2016, and then Kils in November 2016, the causal connection is even weaker. As an initial matter, these hiring decisions were made more than two years after plaintiff first filed his EEOC complaint in March 2014. For the reasons stated above, such a significant lapse does not give rise to a suggestion of retaliatory motive. Moreover, the record shows that the individual who hired Malha and Kils was Mark Spencer. Spencer testified, and plaintiff does not dispute, that he did not learn of plaintiff's EEOC complaint or the *Baron I* Complaint until approximately August or September 2017, after Malha and Kils were hired. Spencer Aff. ¶ 13. And, although Sanan, as HR director, played a role in selecting candidates, Spencer served as the ultimate decisionmaker. *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 ("for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct") (citations omitted)).

---

[4] Moreover, plaintiff's assertion that "[t]he reason Abbott limited its answer . . . was to avoid having to disclose Lanchantin's hiring for the position previously held by Mr. Baron," Pl.'s SOF ¶ 41, is unsupported by citations to the record and states only his "subjective view without any factual foundation." *McGranth v. Lumbermen's Merchandising Corp.*, 851 F. Supp. 2d 855, 857 (E.D. Pa. 2012)(citing *Reynolds v. Dep't of Army*, 439 Fed. App'x. 150, 152 (3d Cir. 2011)). Such statements are not to be considered for the purposes of summary judgment. *Id.*

9

Plaintiff also contends that Abbott's failure to hire him to replace Wood and Gottfried upon their departures in April 2016 and August 2016, respectively, constituted retaliation. The Court is not persuaded. For the same reasons the Court articulated in connection with Abbott's hiring of Malha and Kils,—that the passage of over two years is not unusually suggestive of retaliation and that Spencer, who had no knowledge of Baron or the lawsuit until August or September 2017, made those hiring decisions—it concludes that plaintiff has failed to meet his burden of establishing a *prima facie* case of retaliation.[5]

Accordingly, plaintiff fails to establish a *prima facie* case of retaliation and defendant is entitled to summary judgment on plaintiff's retaliation claims.

## VI. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is granted. An appropriate order follows.

---

[5] Aside from failure to establish a causal connection between his protected activity and the adverse employment action, it is not clear that plaintiff has established that he suffered an adverse employment action in connection with Abbott's decision to hire Lorimer and Emmert to replace Wood and Gottfried. It is undisputed that plaintiff did not apply for either of these positions. Although "the failure to formally apply for a job opening" will not bar a plaintiff from establishing retaliatory action, plaintiff must show that he "made every reasonable attempt to convey his interest in the job to the employer." *E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir. 1990). Plaintiff relies on the fact that his complaint before the EEOC and in *Baron I* sought reinstatement of his employment. That plaintiff sought reinstatement to his former position, which had a higher paygrade and different responsibilities than the positions held by Emmert and Lorimer, is insufficient to establish that plaintiff made every reasonable effort to convey his interest in those positions to Abbott.